**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| OCCIDENTAL CHEMICAL CORPORATION AND OXY VINYLS, LP,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES; UNITED STATES CUSTOMS AND BORDER PROTECTION; RODNEY S. SCOTT, COMMISSIONER FOR UNITED STATES CUSTOMS AND BORDER PROTECTION; UNITED STATES DEPARTMENT OF THE TREASURY; AND SCOTT BESSENT, SECRETARY OF THE TREASURY OF THE UNITED STATES,<br><br>Defendants. | Court. No. 26-03540 |

**<u>COMPLAINT</u>**

Plaintiffs, Occidental Chemical Corporation and Oxy Vinyls, LP, by and through their attorneys, allege and state as follows:

1. In reliance on authority assertedly granted by the International Emergency Economic Powers Act ("IEEPA") (50 U.S.C. § 1701 *et seq*., Pub. L. 95-223, Title II (1977), as amended), President Donald J. Trump created a series tariff regimes described in the following Executive Orders, as modified or amended: *Executive Order 14193 of February 1, 2025: Imposing Duties To Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113 (Feb. 7, 2025), as modified or amended; *Executive Order 14194 of February 1, 2025: Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9,117 (Feb. 7, 2025) as modified or amended; *Executive Order 14195 of February 1, 2025: Imposing Duties To Address the Synthetic Opioid Supply Chain in the People's Republic of China*, 90 Fed. Reg. 9,121 (Feb. 7,

2025), as modified or amended (Proclamations 14193, 14194, and 14195, as modified or amended, together with any associated modifications to the Harmonized Tariff Schedule of the United States ("HTSUS"), the "Trafficking Tariffs"); *Executive Order 14257 of April 2, 2025: Regulating Imports With a Reciprocal Tariff To Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15,041 (Apr. 7, 2025), as modified or amended (Proclamation 14257, as modified or amended, together with any associated modifications to the HTSUS, the "Worldwide and Retaliatory Tariffs"); *Executive Order 14323 of July 30, 2025: Addressing Threats to the United States by the Government of Brazil*, 90 Fed. Reg. 37,739 (Aug. 5, 2025), as modified or amended; *Executive Order 14324 of July 30, 2025: Suspending Duty-Free de Minimis Treatment for All Countries*, 90 Fed. Reg. 37,775 (Aug. 5, 2025), as modified or amended; *Executive Order 14329 of August 6, 2025: Addressing Threats to the United States by the Government of the Russian Federation*, 90 Fed. Reg. 38,701 (Aug. 11, 2025), as modified or amended (all of the foregoing together collectively with any associated modifications to the HTSUS, the "IEEPA Tariff Regimes").

2. In addition to the IEEPA Tariff Regimes described above, the President separately acted in reliance on authority assertedly granted by IEEPA to create several other tariff regimes described in the following Executive Orders, as modified or amended: *Executive Order 14245 of March 24, 2025: Imposing Tariffs on Countries Importing Venezuelan Oil*, 90 Fed. Reg. 13,829 (Mar. 27, 2025); *Executive Order 14380 of January 29, 2026: Addressing Threats to the United States by the Government of Cuba*, 91 Fed. Reg. 5,085 (Feb. 3, 2026); and *Executive Order 14382 of February 6, 2026: Addressing Threats to the United States by the Government of Iran*, 91 Fed. Reg. 6,493 (Feb. 11, 2026). However, to the best of Plaintiffs' knowledge, these three IEEPA regimes were not implemented in practice and no duties (estimated or final) were

imposed, collected, or assessed in furtherance of these three IEEPA tariff regimes. For this reason only, Plaintiffs' action does not challenge these three IEEPA regimes and they are not included within "IEEPA Tariff Regimes" as defined for purposes of this Complaint.

3. In connection with entries, regardless of entry type and whether formal or informal, for which Plaintiffs served as importer of record, the United States collected payments of tariffs and estimated tariffs imposed pursuant to the IEEPA Tariff Regimes (together collectively, the "IEEPA Tariff Payments"). *See, e.g.*, 19 C.F.R. § 141.101 (estimated duties generally deposited with CBP at time of entry based on customs declaration); 19 U.S.C. § 1504 (final duties generally fixed at time of liquidation).

4. On February 20, 2026, a majority of Justices of the Supreme Court of the United States ("Supreme Court") held that "the terms of IEEPA do not authorize tariffs" and thus "IEEPA does not authorize the President to impose tariffs." *Learning Res., Inc. v. Trump*, 607 U.S. ---, 2026 WL 477534 (2026) ("the terms of IEEPA do not authorize tariffs") at 20 (hereinafter "*Learning Resources*," with citations to the Slip Opinion, *available at* www.supremecourt.gov/opinions/25pdf/24-1287_4gcj.pdf). As such, all IEEPA Tariff Regimes are unlawful and all IEEPA Tariff Payments were unlawfully collected and the United States' retention of IEEPA Tariff Payments is and continues to be unlawful.

5. In response to the Supreme Court's holding in *Learning Resources* and subsequent Executive Orders rescinding the IEEPA Tariff Regimes, *see Executive Order 14389 of February 20, 2026: Ending Certain Tariff Actions*, 91 Fed. Reg. 9,437 (Feb. 25, 2026); *Executive Order 14388 of February 20, 2026: Continuing the Suspension of Duty-Free De Minimis Treatment for All Countries*, 91 Fed. Reg. 9,433 (Feb. 25, 2026), CBP ceased collecting IEEPA tariffs on goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 AM

eastern time on February 24, 2026, "CSMS # 67834313 - Ending Collection of International Emergency Economic Powers Act Duties" (Feb. 22, 2026), *available at* content.govdelivery.com/bulletins/gd/USDHSCBP-40b11c9?wgt_ref=USDHSCBP_WIDGET_2.

6. Notwithstanding the IEEPA Tariff Regimes' unlawfulness and the prospective discontinuation of IEEPA tariff collection with respect to future entries, CBP and the U.S. Department of the Treasury ("Treasury Department") continue to possess and retain IEEPA Tariff Payments associated with entries for which Plaintiffs served as importer of record. Neither CBP nor the Treasury Department has taken action to facilitate refund of the IEEPA Tariff Payments associated with those entries.

7. Plaintiffs are filing this action to protect their entitlement to prompt and complete refunds of their IEEPA Tariff Payments for all entries, regardless of entry type or liquidation status, and whether formal or informal.

8. Therefore, Plaintiffs seek a judgment and order of this court (A) declaring, for the same reasons set forth by the Supreme Court in *Learning Resources*, all IEEPA Tariff Regimes unlawful and the assessment, collection, and receipt of all IEEPA Tariff Payments *ultra vires* as applied to Plaintiffs; (B) enjoining Defendants from collecting or retaining any IEEPA Tariff Payments in connection with any entry for which a Plaintiffs served as importer of record; and (C) promptly and completely refunding all IEEPA Tariff Payments, together with interest as provided by law, associated with any and all entries for which a Plaintiffs served as importer of record, regardless of the entry's liquidation status.

## Jurisdiction

9. Consistent with this Court's opinion in *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350, 1365-67 (Ct. Int'l Trade 2025), the Supreme Court has held that disputes concerning the legality of the IEEPA Tariff Regimes "fall{} within the exclusive jurisdiction of the CIT" insofar as the "challenge 'arises out of' modifications to the HTSUS," *Learning Resources*, Slip Op. at 5 n.1.

10. Specifically, this Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" to the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." 28 U.S.C. § 1581(i)(1)(B). In the alternative, the Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D), which confers "exclusive jurisdiction" over matters relating to the "administration and enforcement" respecting such tariffs, duties, fees, or other taxes for reasons other than the raising of revenue. *Id.* § 1581(i)(1)(D).

## Parties

11. Plaintiff Occidental Chemical Corporation is a U.S. company, incorporated in Texas. Occidental Chemical Corporation is "adversely affected or aggrieved" by Defendants' actions and is thus entitled to commence this suit. *See* 28 U.S.C. § 2631(i).

12. Plaintiff Oxy Vinyls, LP is a Delaware limited partnership. Oxy Vinyls, LP is "adversely affected or aggrieved" by Defendants' actions and is thus entitled to commence this suit. *See* 28 U.S.C. § 2631(i).

13. Defendant United States of America received the IEEPA Tariff Payments and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581.

14. Defendant CBP is the agency that assesses and collects tariffs on imports. CBP administered the IEEPA Tariff Regimes and assessed and collected IEEPA Tariff Payments on entries for which each Plaintiff served as importer of record.

15. Defendant Rodney S. Scott is the Commissioner of CBP and is sued in his official capacity. Commissioner Scott oversees CBP's administration of the IEEPA Tariff Regimes and its collection of IEEPA Tariff Payments on Plaintiffs' entries.

16. Defendant Treasury Department is the agency that possesses and retains IEEPA Tariff Payments made by Plaintiffs on behalf of the Government of the United States of America.

17. Defendant Scott Bessent is the Secretary of the Treasury of the United States and is sued in his official capacity. Secretary Bessent oversees the Treasury Department's continued possession and retention of IEEPA Tariff Payments on Plaintiffs' entries.

## STANDING

18. Due to Defendants' unlawful IEEPA Tariff Regimes, Plaintiff Occidental Chemical Corporation made IEEPA Tariff Payments or caused IEEPA Tariff Payments to be made to Defendants on certain customs entries for which Plaintiff Occidental Chemical Corporation served as importer of record. IEEPA Tariff Payments made by Occidental Chemical Corporation are presently possessed and retained by Defendants. Plaintiff Occidental Chemical Corporation herein seeks a prompt and complete refund of all IEEPA Tariff Payments, with interest, as well as injunctions and declarations to prevent Defendants from collecting any IEEPA Tariff Payments from Plaintiff Occidental Chemical Corporation in the future.

19. Due to Defendants' unlawful IEEPA Tariff Regimes, Plaintiff Oxy Vinyls, LP made IEEPA Tariff Payments or caused IEEPA Tariff Payments to be made to Defendants on certain customs entries for which Plaintiff Oxy Vinyls, LP served as importer of record. IEEPA Tariff Payments made by Oxy Vinyls, LP are presently possessed and retained by Defendants. Plaintiff Oxy Vinyls, LP herein seeks a prompt and complete refund of all IEEPA Tariff Payments, with interest, as well as injunctions and declarations to prevent Defendants from collecting any IEEPA Tariff Payments from Plaintiff Oxy Vinyls, LP in the future.

## TIMELINESS

20. A plaintiff must commence an action under 28 U.S.C. § 1581(i) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

21. This action contests the imposition of tariffs arising out of unlawful IEEPA Tariff Regimes that were assessed or collected upon entries for which a Plaintiff served as importer of record, and the United States' retention of such IEEPA Tariff Payments associated with any and all such entries.

22. Plaintiffs' claims with respect to the IEEPA Tariff Regimes began, at the earliest, on February 1, 2025, when the President published the Executive Order announcing the first of the IEEPA Tariff Regimes.[1] This action is timely commenced within two years of that date.

## LEGAL AUTHORITY

### I. Constitutional Provisions

23. Article I, Section 8, Clause 1 of the Constitution of the United States of America (the "Constitution") states as follows: "The Congress shall have Power To lay and collect Taxes,

---

[1] Arguably, claims with respect to each individual regime comprising the IEEPA Tariff Regimes did not accrue until the first date on which tariffs associated with each individual regime went into effect.

Duties, Imposts and Excises…but all Duties, Imposts and Excises shall be uniform throughout the United States."

24. Article I, Section 8, Clause 3 of the Constitution additionally invests Congress with the power "To regulate Commerce with foreign Nations…"

## II. Statutory Authority Cited by the IEEPA Tariff Regime Executive Orders

25. Notwithstanding the Constitution's exclusive grant of tariff authority to Congress, the various Executive Orders promulgating and directing implementation of the individual tariff regimes that collectively comprise the IEEPA Tariff Regimes invoke the authority of the following statutes, as amended: IEEPA, the National Emergencies Act, Section 604 of the Trade Act of 1974, and 3 U.S.C. § 301.

26. In relevant part, IEEPA empowers the President as follows:

> {to} investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States;
>
> 50 U.S.C. § 1702(a)(1)(B).

27. Actions taken pursuant to IEEPA "may only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

28. The National Emergencies Act (50 U.S.C. § 1601 *et seq.*) (the "NEA"), provides the general framework for declaring and reporting national emergencies. The NEA requires that "{w}hen the President declares a national emergency, no powers or authorities made available by statute for use in the event of an emergency shall be exercised unless and until the President

specifies {in an Executive Order} the provisions of law under which he proposes that he, or other officers will act." 50 U.S.C. § 1631.

29. Section 604 of the Trade Act of 1974 (19 U.S.C. § 2483) provides that the "President shall from time to time, as appropriate, embody in the {HTSUS} the substance of the relevant provisions of this chapter, and of other Acts affecting import treatment, and actions thereunder, including removal, modification, continuance, or imposition of any rate of duty or other import restriction."

30. Section 301 of Title 3 of the United States Code authorizes the President to empower certain other officials to perform "any function which is vested in the President by law."

## FACTUAL BACKGROUND

### I. President Trump Imposed the Unlawful IEEPA Tariff Regimes, whereupon CBP Assessed and Collected IEEPA Tariff Payments that the Government Has Since Retained

31. Beginning on February 1, 2025, President Trump issued a series of Executive Orders imposing tariffs on imports that ultimately covered most goods from almost every country. Each of these Executive Orders was premised on the President's assertion that IEEPA empowers the President to impose tariffs. Thus, President Trump claimed that IEEPA authorized each of the tariff regimes collectively comprising the IEEPA Tariff Regimes as a response to certain national emergencies.

32. In addition to IEEPA itself, the Executive Orders associated with the IEEPA Tariff Regimes also refer to the following authorities: the NEA, 19 U.S.C. § 2483, and 3 U.S.C. § 301.

33. From time to time, the President amended or modified the rate or rates of tariff imposed pursuant to certain of the tariff regimes collectively comprising the IEEPA Tariff Regimes. Over the period during which IEEPA Tariff Regimes were imposed, *ad valorem* tariff rates associated with individual IEEPA Tariff Regimes ranged as high as 125%. *See Executive Order 14266 of*

*April 9, 2025: Modifying Reciprocal Tariff Rates To Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025).

34. *Executive Order 14324 of July 30, 2025: Suspending Duty-Free de Minimis Treatment for All Countries*, 90 Fed. Reg. 37,775 (Aug. 5, 2025), as modified or amended, together with its implementing language in the HTSUS (the "*De Minimis* IEEPA Tariff"), is distinctive among the IEEPA Tariff Regimes insofar as it both (1) eliminated the availability of duty-free entry for shipments valued at $800 or less and (2) defined and imposed IEEPA-based tariffs on certain categories of shipments for which eligibility for the *de minimis* exemption had been eliminated. Plaintiffs' present action challenges only the second aspect of the *De Minimis* IEEPA Tariff.[2]

35. To implement the IEEPA Tariff Regimes and make the IEEPA tariffs effective in practice, the Executive Orders invoked the President's statutory authority to embody tariff changes within the HTSUS.[3] *See* 19 U.S.C. § 2483; *Michael Simon Design, Inc. v. United States*, 33 C.I.T. 1003, 1010 (2009) ("The authority to modify the HTSUS lies with the President"). Thereafter, Chapter 99, Subchapter III, of the HTSUS required that goods subject to the IEEPA Tariff Regimes be entered under newly created HTSUS classifications to facilitate CBP's assessment and collection of IEEPA Tariff Payments.[4]

36. CBP is charged with the assessment and collection of tariffs, including tariffs imposed pursuant to the IEEPA Tariff Regimes. *See, e.g.*, 19 U.S.C. §§ 1500, 1502; 6 U.S.C. § 212.

---

[2] Plaintiffs do not, however, concede the lawfulness of the first aspect of the *De Minimis* IEEPA Tariff, and reserve the right to challenge that aspect in a separate action.

[3] The Omnibus Trade and Competitiveness Act of 1988 adopted the HTSUS as the tariff nomenclature applicable to goods imported into the United States. Pub. L. No. 100–418, 102 Stat. 1107 (1988).

[4] A new "revision" of the HTSUS is issued in connection with such modifications. The modifications at issue here manifest in 2025 HTS Revision 1 (Feb. 7, 2025) through 2026 HTS Revision 3 (Feb. 11, 2026).

37. CBP classifies goods imported into the United States consistent with the HTSUS, which sets out the tariff rates and statistical categories using a series of nested chapters, headings, and subheadings. 19 U.S.C. § 1202. The HTSUS headings cover broad categories of merchandise, while the subheadings provide more specific classifications.

38. CBP's regulations govern the classification and appraisement of merchandise, consistent with the HTSUS. 19 C.F.R. § 152.11. ("Merchandise shall be classified in accordance with the Harmonized Tariff Schedule of the United States (19 U.S.C. § 1202) as interpreted by administrative and judicial rulings.").

39. The United States International Trade Commission ("USITC") publishes and maintains the HTSUS consistent with presidential orders. 19 U.S.C. §§ 1202, 3005, 3006.

40. When goods enter the United States, CBP is responsible for assessing and collecting any tariffs on those goods, after confirming the HTSUS classification of the goods, according to the rates established by the HTSUS. *E.g.*, 19 U.S.C. §§ 1202, 1500, 1502.

41. In implementing the IEEPA Tariff Regimes, CBP required that goods subject to the IEEPA Tariff Regimes be classified under newly created HTSUS codes that were based upon assertions of Presidential authority that the Supreme Court has now declared unlawful and *ultra vires*.

42. To implement the collection of IEEPA tariffs, CBP utilized its Cargo Systems Messaging Service ("CSMS") to inform importers, including Plaintiffs, of changes to the amount and administration of import duties pursuant to the IEEPA Tariff Regimes. *See, e.g.*, CSMS # 64297449 (Mar. 3, 2025); CSMS # 64297292 (Mar. 3, 2025); CSMS # 64299816 (Mar. 3, 2025) (collectively, initial implementation of the IEEPA Trafficking Tariffs).

43. To implement the IEEPA Tariff Regimes, CBP otherwise required importers to make IEEPA Tariff Payments in amounts determined by application of the newly created HTSUS codes and associated descriptions referenced above.

## II. IEEPA Duty Payments Were Unlawfully Collected on Entries for which Plaintiffs Served as Importer of Record

44. When goods are imported into the United States, the importer of record generally submits a customs declaration to provide information on the goods' value, origin, and HTSUS classification, and pays an estimated duty on the entry based on that information. 19 U.S.C. §§ 1484, 1505(a). In addition to "formal" entry procedures, streamlined "informal" entry procedures are available for entries of certain eligible merchandise. *See generally* 19 C.F.R. Part 143, Subpart C.

45. As of the date of this complaint, individual Plaintiffs have served as importer of record for entries for which individual Plaintiffs made IEEPA Tariff Payments or otherwise caused IEEPA Tariff Payments to be made (together collectively, "Plaintiffs' IEEPA Entries"). This Complaint encompasses all affected entries by Plaintiffs, individually or collectively, regardless of entry type or liquidation status, and whether formal or informal in nature.

46. Plaintiffs' IEEPA Entries included goods classified under HTSUS codes and associated descriptions created to implement the IEEPA Tariff Regimes, as set forth in Subchapter III of Chapter 99 of the HTSUS.

47. Although CBP represents that it ceased to collect IEEPA Tariff Payments on goods entered for consumption or withdrawn from warehouse for consumption, on or after 12:00 AM eastern time on February 24, 2026, CBP nevertheless continues to require that Plaintiff tender IEEPA Tariff Payments with respect to entries made prior to 12:00 AM eastern time on February 24, 2026. In a sworn declaration filed before this Court in *Atmus Filtration, Inc. v. United States*,

CBP confirmed that it "has not issued instructions directing our employees to liquidate entries without IEEPA duties." Declaration of Brandon Lord in Response to the Court's Questions of March 3, 2026, USCIT Ct. No. 26-1259, ECF Doc. 19 (Mar. 4, 2026) at 3.

48. Certain of Plaintiffs' IEEPA Entries have liquidated; other of Plaintiffs' IEEPA Entries may soon liquidate.

49. "Liquidation" means "the final computation or ascertainment of duties on entries for consumption or drawback entries." 19 C.F.R. § 159.1; *see also* 19 U.S.C. § 1504(b). Liquidation must occur within one year of entry, unless extended. 19 U.S.C. §§ 1504(a), (b)(2). In practice, liquidation generally occurs within 314 days of the date of entry, but it may occur within one month of the date of entry for certain informal entries.

50. In a sworn declaration filed before this Court in *Atmus Filtration, Inc. v. United States*, CBP confirmed that "for those entries where IEEPA duties were declared at entry, CBP is liquidating those entries with duties imposed pursuant to IEEPA" and "CBP has not issued refunds of IEEPA duties as the result of liquidations that have taken place since the Supreme Court's decision." Declaration of Brandon Lord in Response to the Court's Questions of March 3, 2026, USCIT Ct. No. 26-1259, ECF Doc. 19 (Mar. 4, 2026) at 2-3.

51. With respect to unliquidated entries, CBP sometimes issues importers a Notice of Action (Customs Form CF29) instructing an importer to pay additional tariffs. On information and belief, CBP has issued such Notices to demand that importers pay tariffs pursuant to IEEPA Tariff Regimes.

52. Neither the Executive Order 14389 nor CBP's CSMS # 67834313 concerning the prospective discontinuation of IEEPA tariff collection with respect to entries made on or after February 24, 2026, addresses whether CBP may seek to collect IEEPA tariffs with respect to

earlier entries pursuant to the IEEPA Tariff Regimes, including through the issuance of a new Notice of Action or efforts to enforce previously issued Notices of Action seeking IEEPA Tariff Payments.

53. Neither CBP nor the Treasury Department has refunded Plaintiffs' IEEPA Tariff Payments associated with earlier entries or interest as provided by law.

**III. The Supreme Court Held that IEEPA Confers No Power to Impose Tariffs**

54. On April 14, 2025, several companies initiated suit before the United States Court of International Trade ("USCIT"), challenging the legality of the Trafficking Tariffs and Worldwide and Retaliatory Tariffs. *V.O.S. Selections v. United States*, USCIT Ct. No. 25-00066, ECF Doc. 2 (Apr. 15, 2025) ("*V.O.S. Selections*").

55. On April 23, 2025, several state Attorneys General initiated suit before the USCIT, likewise challenging the legality of the Trafficking Tariffs and Worldwide and Retaliatory Tariffs. *The State of Oregon v. United States*, USCIT Ct. No. 25-00077, ECF Doc. 2 (Apr. 23, 2025) ("*State of Oregon*")

56. The USCIT and United States Court of Appeals for the Federal Circuit ("Federal Circuit") each heard *V.O.S. Selections* and *State of Oregon* together. Each Court issued opinions and judgments holding the Trafficking Tariffs and Worldwide and Retaliatory Tariffs to be unlawful. *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025) (en banc); *V.O.S. Selections, Inc. v. United States*, 772 F. Supp. 3d 1350 (Ct. Int'l Trade 2025).

57. The Government appealed the USCIT and Federal Circuit decisions to the Supreme Court. On February 20, 2026, a majority of Justices of the Supreme Court held that IEEPA does not empower the President to impose tariffs. *Learning Resources*, Slip Op. at 20.

58. In brief, the Supreme Court reasoned that Article I, Section 8 of the Constitution invests the whole power of taxation—including the power to impose tariffs—with Congress. *Id.* at 5-6.

The Court then analyzed the text of IEEPA and held that the authority to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit…importation or exportation" does not encompass the power to make tariffs. *See* 50 U.S.C. § 1702(a). *Learning Resources*, Slip Op. at 14-20.

59. The Supreme Court's statutory analysis was informed by the following: First, IEEPA does not use the term "tariff" or "duty," in contrast to other statutes wherein Congress has granted tariff-making authority. *Id.* at 14. Second, if the term "regulate" in IEEPA were read broadly enough to encompass tariff-making, then it would render all the other named powers "simply wasted ink." *Id.* Third, the Government had not identified any other statute in which the power to "regulate" included the power to tax. *Id.* at 14-15. Fourth, there are other statutes in which Congress addresses the power to "regulate" and also separately addresses the power to "tax." *Id.* at 15. Fifth, reading IEEPA as conferring the power to impose tariffs would render it partly unconstitutional insofar as IEEPA applies to "exportation" as well as importation and the Constitution expressly forbids taxing exports. *Id.* at 15. Sixth, no other president has ever claimed that IEEPA conferred tariff-making authority. *Id.* at 16. Seventh, when Congress has done so expressly and conferred tariff-making authority in other statutes, it has imposed "various combinations of procedural prerequisites, required agency determinations, and limits on the duration, amount, and scope of the tariffs they authorize," aspects that are absent from IEEPA. *Id.* at 16-17.

60. Of the authorities referenced in the Executive Orders associated with the IEEPA Tariff Regimes, in litigation to date, Defendants rely exclusively on IEEPA to justify the IEEPA Tariff Regimes' creation and implementation.

**IV. The Courts Have Not Yet Finally Resolved Questions Concerning the Availability, Scope, and Procedures for Refunds of IEEPA Tariff Payments**

61. In *V.O.S. Selections*, the USCIT ordered that the Trafficking Tariffs and Worldwide and Retaliatory Tariffs be "vacated and their operation permanently enjoined." 772 F. Supp. 3d at 1383. The USCIT further stated "{t}here is no question here of narrowly tailored relief; if the challenged Tariff Orders are unlawful as to Plaintiffs they are unlawful as to all," citing the Constitution's Uniformity Clause. *Id.* (citing U.S. Const. art. I, § 8, cl. 1). Enforcement of the USCIT's order was stayed by the Federal Circuit. Order, *V.O.S. Selections, Inc. v. Trump*, CAFC Ct. No. 25-1812, ECF Doc. 51 (June 10, 2025).

62. However, while the Government's appeal of *V.O.S. Selections* was pending before the Federal Circuit, the Supreme Court published *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), which limited the scope of injunctive relief that federal district courts may order. Given this, the Federal Circuit vacated the USCIT's "grant of a permanent injunction universally enjoining the enforcement" of the Trafficking Tariffs and Worldwide and Retaliatory Tariffs and ordered the USCIT to "reevaluate…the proper scope of relief." *V.O.S. Selections, Inc.*, 149 F.4th at 1340. Despite this, the Federal Circuit "neither affirm{ed} nor revers{ed} the CIT's holding that any relief short of a universal injunction would be unconstitutional as violative of the Uniformity Clause." *Id.* at 1340 n.20.

63. On appeal before the Supreme Court, although definitive with respect to the IEEPA Tariff Regimes' unlawfulness, the Supreme Court's opinion provided no instructions as to how an importer of record may obtain a refund, with interest, for the unlawful tariffs. *See generally Learning Resources*, Slip Op. at 1-21.

64. At a press conference called in response to the Supreme Court's decision later the same day, the President suggested that the Government may contest IEEPA tariff refundability, stating

"Wouldn't you think the {Supreme Court} would have put one sentence in {*Learning Resources*} saying that keep the money or don't keep the money, right? I guess it has to get litigated for the next two years." Press Conference: Donald Trump Addresses the Supreme Court Tariff Decision, *rollcall.com* (Feb. 20, 2026), *available at* https://rollcall.com/factbase/trump/transcript/donald-trump-press-conference-supreme-court-tariffs-february-20-2026/.

65. Procedurally, the Supreme Court affirmed the Judgment of the Federal Circuit. In turn, the Federal Circuit issued the mandate to the USCIT on March 2, 2026. Mandate, CAFC Ct. No. 25-1812, ECF Doc. 174 (Mar. 2, 2026).

66. At the time of filing of this Complaint, the USCIT is thus undertaking to establish the scope and structure of remedies. Specifically, in *Atmus Filtration* the Court ordered as follows: "with respect to any and all unliquidated entries that were entered subject to the IEEPA duties imposed by the Executive Orders considered by the Supreme Court in *Learning Resources, Inc. v. Trump*, 2026 WL 477534 (U.S. Feb. 20, 2026), U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties." Order, USCIT Ct. No. 26-1259, ECF Doc. 21 (Mar. 4, 2026).

67. The USCIT's March 4, 2026, order of relief has since been amended in various ways under various case captions. At present, the Order provides in relevant part as follows: "with respect to any and all unliquidated entries that were entered subject to IEEPA duties, U.S. Customs and Border Protection is hereby directed to liquidate those entries without regard to the IEEPA duties. Any liquidated entries for which liquidation is not final shall be reliquidated without regard to those duties. Any liquidated entries for which liquidation is final shall be

reliquidated without regard to the IEEPA duties," although the Order is suspended to the extent that it requires immediate compliance. Order, CIT Ct. No. 25-00066, ECF Doc. 82 (Apr. 17, 2026).

68. Thus far, the Government has undertaken to facilitate refunds for certain categories of entries pursuant to various iterations of a program that the Government has labeled "CAPE," short for "Consolidated Administration and Processing of Entries." CAPE has been developed in different "phases," with each "phase" designed to facilitate refunds for specific categories of entries. *See generally, e.g.*, "Declaration of Executive Assistant Commissioner Susan S. Thomas," CIT Ct. No. 25-66, ECF Doc. 98-1 (June 4, 2026) (describing development of CAPE, its various phases, and future plans); "Declaration of Brandon Lord Responding to July 2, 2026 Court Order," CIT Ct. No. 25-595, ECF Doc. 45 (July 13, 2026) (describing current status). However, the Government has maintained that, at present, it **does not** intend to refund IEEPA duties on certain categories of entries; for example, "entries of non-plaintiffs that liquidated beyond the 80-day period." "Declaration of Executive Assistant Commissioner Susan S. Thomas," CIT Ct. No. 25-66, ECF Doc. 98-1 (June 4, 2026) at ¶12. There are other categories of entries that have not yet been addressed by a CAPE "phase," *see id.* at ¶13 (describing, *inter alia*, "entries included on an administrative protest"), and it is unclear whether CBP intends to limit refunds of these entries as well, *see id.*

69. Thus, whereas the USCIT has undertaken to order universal relief that would secure IEEPA refunds, plus interest, even for non-litigants, the Government has challenged the USCIT's power to do so. *See V.O.S. Selections, Inc. v. Trump*, CAFC Consol. Ct. No. 26-1895. At this time, it is not yet clear how the U.S. Court of Appeals for the Federal Circuit will ultimately resolve the issues to be raised by the Government's challenge. Indeed, the precise

scope of the Government's challenge is unclear insofar as no opening brief has been filed. The possibility of a subsequent appeal to the Supreme Court related to matters of relief raises further uncertainty with respect to the outcome of the Government's challenge to the scope of relief ordered by the USCIT.

70. At the same time, the USCIT has begun ordering case-specific relief for "any and all of Plaintiffs' entries that have been liquidated for more than 80 days and on which Plaintiffs made estimated deposits pursuant to IEEPA." *E.g.*, "Order," *In Re Tariffs Collected in Reliance on International Emergency Economic Powers Act (IEEPA)*, filed in multiple cases including USCIT Ct. No. 25-78, ECF Doc. 25-2 (July 15, 2026). To implement these orders, CBP has developed or is developing additional CAPE functionality to facilitate refunds of such entries. *See, e.g.*, "Order," USCIT Ct. No. 25-00595, ECF Doc. 46 (July 15, 2026).

71. In sum, notwithstanding the stipulations discussed *infra*, it is not clear from how the USCIT may be able address the refund of entries by non-litigants that have already finally liquidated or that finally liquidate in the future. As such, Plaintiffs lack clarity with respect to what court-ordered remedy, if any, might ultimately take shape for entities that have not filed cases challenging the imposition or retention of IEEPA tariffs in their own name before this Court. At the same time, it is apparent that unique IEEPA tariff refund procedures are being made available, at least for certain categories of entries, for entities with IEEPA cases in their own name before this Court.

## V. The Government Has Made Substantive Stipulations Concerning Relief and Should Be Judicially Estopped from Altering Its Position

72. In some respects, Plaintiffs do have a measure of certainty based on representations made by the Government in related litigation and principles of judicial estoppel. Insofar as the Government made these representations publicly and in service of the Government's efforts to

obtain for itself case management procedures that were acceptable to the Government, the Government should be held to those positions in this action.

73. First, to the extent that some or all of Plaintiffs' entries finally liquidate, the Government has stipulated that is no bar to recovery. Specifically, the Government stipulated that, with respect to plaintiffs "who challenge IEEPA tariffs in a manner and on grounds that substantially overlap with the IEEPA tariffs cases presently before the Supreme Court," including all IEEPA Tariff Regimes that resulted in the imposition of tariffs, the Government "do{es} not intend to challenge the Court's authority to order reliquidation." Defendant's Response to Court's January 8, 2026 Letter, *AGS Co. Automotive Solutions v. United States*, USCIT Ct. No. 25-00255, ECF Doc. 34 (Jan. 8, 2026). Thereafter, the USCIT "confirmed that the Government's stipulation regarding reliquidation applies to all current and future similarly situated plaintiffs." Minute Order, *AGS Co. Automotive Solutions v. United States*, USCIT Ct. No. 25-00255, ECF Doc. 35 (Jan. 14, 2026); *see also AGS Co. Auto. Sols. v. U.S. Customs & Border Prot.*, No. 25-00255, 2025 WL 3634261, at *4 (Ct. Int'l Trade Dec. 15, 2025) ("the Government has taken the "unequivocal position" that "liquidation will not affect the availability of refunds after a final decision" in *V.O.S.* The Government would be judicially estopped from "assum{ing} a contrary position" in the future. Additionally, this court has the authority to order reliquidation in cases involving constitutional challenges to duties under 28 U.S.C. § 1581(i).") (internal citations omitted); *see also Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1348 (Fed. Cir. 2019).

74. Plaintiffs in this action are "similarly situated" within the meaning of Defendants' stipulations in related litigation, summarized above. Specifically, by invoking the rationale of *Learning Resources* in an action brought under 28 U.S.C. § 1581(i), Plaintiffs are unquestionably "challenging IEEPA tariffs in a manner and on grounds that substantially overlap with the

IEEPA tariffs cases…before the Supreme Court." Defendant's Response to Court's January 8, 2026 Letter, *AGS Co. Automotive Solutions v. United States*, USCIT Ct. No. 25-00255, ECF Doc. 34 (Jan. 8, 2026).

75. Second, with respect to the availability of refunds, the Government's motion before the Federal Circuit to stay enforcement of the USCIT's judgment in *V.O.S. Selections* confirmed that "{i}f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then *the government will issue refunds to plaintiffs*, including any postjudgment interest that accrues." Emergency Motion for a Stay Pending Appeal and an Immediate Administrative Stay, at 25, *V.O.S. Selections, Inc. v. Trump*, CAFC Ct. No. 25-1812, ECF Doc. 6 (May 29, 2025) (emphasis supplied); *see also* Reply in Support of Emergency Motion for a Stay Pending Appeal, *V.O.S. Selections, Inc. v. Trump*, CAFC Ct. No. 25-1812, ECF Doc. 47 (June 9, 2025) ("plaintiffs who import goods, and thus would pay tariffs while the injunction is stayed, agree that refunds are available for tariffs ultimately held unlawful.") The Government's use of the general term "plaintiffs" and the fact that its representation was made in support of a request to stay implementation of a universal injunction that would otherwise have applied to all importers, means that the Government's representation necessarily extends to all importers.

76. Third, with respect to the interest owed in connection with any refunds of IEEPA Tariff Payments, the Government asserted in opposing issuance of the mandate by the Federal Circuit to the USCIT that plaintiffs in that action were not harmed by the delay in issuing refunds because that "can be remedied by payment of money *with appropriate interest*…" Government's Opposition to Motion for Immediate Issuance of the Mandate and Cross-Motion to Stay the Mandate, *V.O.S. Selections v. Trump*, CAFC Ct. No. 25-1812, ECF Doc. 171 (Feb. 27, 2026) (emphasis supplied). Even more recently, in response to the USCIT's refund Order in *Atmus*

*Filtration*, CBP conceded that "{i}n addition to refunding the IEEPA duties, CBP must also pay importers interest, as required by law." Declaration of Brandon Lord, USCIT Ct. No. 26-1259, ECF Doc. 31 (Mar. 6, 2026) at 9. As such, while the timing of Government action remains uncertain, it has conceded that interest will be paid.

## STATEMENT OF CLAIMS

## COUNT ONE

### (THE TRAFFICKING TARIFFS AND WORLDWIDE AND RETALIATORY TARIFFS ARE *ULTRA VIRES*, UNLAWFUL, AND VOID *AB INITIO*; DEFENDANTS MUST REFUND PLAINTIFFS' IEEPA TARIFF PAYMENTS, WITH INTEREST)

77. Paragraphs 1 through 76 are incorporated as if fully restated herein.

78. Because IEEPA does not empower the President to impose tariffs for the reasons articulated in *Learning Resources*, the Trafficking Tariffs and Worldwide and Retaliatory Tariffs initially challenged by the Plaintiffs in *V.O.S. Selections* and *State of Oregon* are unlawful, *ultra vires*, and void *ab initio* insofar as they impose tariffs.

79. Because the Trafficking Tariffs and Worldwide and Retaliatory Tariffs are unlawful insofar as they impose tariffs, all associated modifications of the HTSUS undertaken to impose tariffs pursuant to the Trafficking Tariffs or Worldwide and Retaliatory Tariffs are likewise unlawful, *ultra vires*, and void *ab initio*.

80. Because the Trafficking Tariffs and Worldwide and Retaliatory Tariffs are unlawful insofar as they impose tariffs, all tariffs collected and retained pursuant to such regimes on Plaintiffs' IEEPA Entries must be refunded, together with interest as provided by law, to each respective Plaintiff. Defendants have no authority to withhold refunds of these unlawful tariffs.

81. Due process requires that Defendants refund the IEEPA Tariff Payments that Defendants have unlawfully collected and retained. *See McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36-39 (1990).

82. As of the date of filing of this Complaint, notwithstanding the USCIT's March 4, 2026, Order in *Atmus Filtration*, as amended, Defendants have not yet completely refunded to Plaintiffs IEEPA Tariff Payments associated with the Trafficking Tariffs and Worldwide and Retaliatory Tariffs collected upon Plaintiffs' IEEPA Entries. Nor have Defendants completely refunded interest associated with such IEEPA Tariff Payments.

83. Plaintiffs respectfully request that this Court apply the binding decision and holding of *Learning Resources*, declare the Trafficking Tariffs and Worldwide and Retaliatory Tariffs and all associated IEEPA Tariff Payments unlawful as to Plaintiffs, enjoin Defendants from enforcing Trafficking Tariffs and Worldwide and Retaliatory Tariffs as to Plaintiffs, and order the prompt and complete refund of all IEEPA Tariff Payments collected upon entries for which a Plaintiff served as importer of record, together with interest as provided by law.

## STATEMENT OF CLAIMS

## COUNT TWO

### (ALL IEEPA TARIFF REGIMES OTHER THAN THE TRAFFICKING TARIFFS AND WORLDWIDE AND RETALIATORY TARIFFS ARE *ULTRA VIRES*, UNLAWFUL, AND VOID *AB INITIO*; DEFENDANTS MUST REFUND PLAINTIFFS' IEEPA TARIFF PAYMENTS, WITH INTEREST)

84. Paragraphs 1 through 83 are incorporated as if fully restated herein.

85. Because IEEPA does not empower the President to impose tariffs for the reasons articulated in *Learning Resources*, and because all IEEPA Tariff Regimes improperly rely on nonexistent IEEPA authority to impose tariffs, the tariff regimes that are necessarily unlawful, *ultra vires*, and void *ab initio* by application of the Supreme Court's holding and rationale

include not only the Trafficking Tariffs and Worldwide and Retaliatory Tariffs initially challenged by the Plaintiffs in *V.O.S. Selections* and *State of Oregon*, but all IEEPA Tariff Regimes. All IEEPA Tariff Regimes are materially identical in structure, authority claimed, and effect.

86. Because all IEEPA Tariff Regimes are unlawful insofar as they impose tariffs under IEEPA, all associated modifications of the HTSUS undertaken to impose tariffs pursuant to any of the IEEPA Tariff Regimes are likewise unlawful, *ultra vires*, and void *ab initio*.

87. Because all IEEPA Tariff Regimes are unlawful insofar as they impose tariffs, all IEEPA Tariff Payments collected and retained pursuant to such regimes on Plaintiffs' IEEPA Entries must be refunded, together with interest as provided by law, to each respective Plaintiff. Defendants have no authority to withhold refunds of these unlawful tariffs.

88. Due process requires that Defendants refund the IEEPA Tariff Payments that Defendants have unlawfully collected and retained. *See McKesson Corp.*, 496 U.S. at 36-39.

89. As of the date of filing of this Complaint, notwithstanding the USCIT's March 4, 2026, Order in *Atmus Filtration*, as amended, Defendants have not yet completely refunded IEEPA Tariff Payments collected upon Plaintiffs' IEEPA Entries. Nor have Defendants completely refunded interest associated with such IEEPA Tariff Payments.

90. Plaintiffs respectfully request that this Court apply the binding decision and holding of *Learning Resources*, declare all IEEPA Tariff Regimes and all associated IEEPA Tariff Payments unlawful as to Plaintiffs, enjoin Defendants from enforcing IEEPA Tariff Regimes as to Plaintiffs, and order the prompt and complete refund of all IEEPA Tariff Payments upon Plaintiffs' IEEPA Entries, together with interest as provided by law.

## **COUNT THREE**

**(ADMINISTRATIVE PROCEDURE ACT)**

91. Paragraphs 1 through 90 are incorporated as if fully restated herein.

92. The APA provides that "{a} person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 701.

93. The Administrative Procedure Act ("APA") empowers the Court to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations. 5 U.S.C. § 706(2).

94. Entities such as CBP and the Treasury Department that are responsible for and implementing the IEEPA Tariff Regimes are "agencies" within the meaning of the APA. 5 U.S.C. § 701. These entities have taken various actions in furtherance of the IEEPA Tariff Regimes and the collection and retention of IEEPA Tariff Payments, and continue to take or withhold such actions including, "for those entries where IEEPA duties were declared at entry, CBP is liquidating those entries with duties imposed pursuant to IEEPA" and "not issu{ing} refunds of IEEPA duties as the result of liquidations that have taken place since the Supreme Court's decision." Declaration of Brandon Lord in Response to the Court's Questions of March 3, 2026, USCIT Ct. No. 26-1259, ECF Doc. 19 (Mar. 4, 2026) at 2-3.

95. For all the reasons articulated in *Learning Resources*, all final agency actions of Defendant agencies in furtherance of the unlawful IEEPA Tariff Regimes and the collection and retention of IEEPA Tariff Payments as applied to Plaintiffs are *ipso facto* arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and in excess of statutory jurisdiction, authority, or limitations.

96. Therefore, the Court should hold unlawful and set aside all acts of Defendant agencies in furtherance of the unlawful IEEPA Tariff Regimes and the collection and retention of IEEPA Tariff Payments as applied to Plaintiffs, enjoin Defendants from enforcing IEEPA Tariff Regimes as to Plaintiffs, and order the prompt and complete refund of all IEEPA Tariff Payments upon Plaintiffs' IEEPA Entries.

## COUNT FOUR

### (DECLARATORY JUDGMENT)

97. Paragraphs 1 through 96 are incorporated as if fully restated herein.

98. The USCIT has the power to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a).

99. Plaintiffs' claims present an actual controversy as to the President's authority under IEEPA, and the authority of Defendants to implement, collect, and retain IEEPA Tariff Payments pursuant to the unlawful IEEPA Tariff Regimes.

100. Plaintiffs are importers of record and have suffered injury by having been required, pursuant to the IEEPA Tariff Regimes, to make IEEPA Tariff Payments on articles that Plaintiffs have imported into the United States.

101. This Court can exercise its equitable power to enter a declaratory judgment that each of the IEEPA Tariff Regimes is unlawful for any of the reasons identified in this Complaint; that Defendants lack authority to implement, collect, or retain IEEPA Tariff Payments as to Plaintiffs; and that all liquidated entries on which Plaintiffs made IEEPA Tariff Payments should be reliquidated and IEEPA Tariff Payments refunded with interest. This Court should do so.

## Powers of the Court

102. The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate form of civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).

103. The holding of *Trump v. CASA, Inc.* "does not apply to the orders that will be issued" with respect to IEEPA tariff refunds. Order, USCIT Ct. No. 26-1259, ECF Doc. 21 (Mar. 4, 2026).

104. This Court possesses the equitable authority to suspend liquidation. *E.g.*, *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1365-66 (Ct. Int'l Trade 2021).

## Prayer for Relief

Wherefore, Plaintiffs respectfully request that this Court

1) enter judgment in Plaintiffs' favor;

2) declare that Defendants lack authority pursuant to IEEPA to set tariff rates or implement new tariffs;

3) declare all IEEPA Tariff Regimes are *ultra vires* and void *ab initio* as applied to Plaintiffs;

4) declare that, with respect to Plaintiffs, Defendants lack authority to implement and collect any tariff payments or estimated tariff payments pursuant to or derived from any of the IEEPA Tariff Regimes;

5) declare that, with respect to Plaintiffs, Defendants lack authority to retain any IEEPA Tariff Payments;

6) with respect to Plaintiffs, permanently enjoin Defendants from imposing, enforcing, or collecting tariffs pursuant to any of the IEEPA Tariff Regimes, including (but not limited to) the issuance or enforcement of CF29 Notice of Action seeking IEEPA Tariff Payments, or the liquidation of entries with IEEPA Tariff Payments;

7) order Defendants to promptly and completely refund to each Plaintiff all IEEPA Tariff Payments associated with any and all of Plaintiffs' IEEPA Entries, regardless of entry type or liquidation status, and whether the entry was formal or informal in nature, together with interest as provided by law;

8) in particular, with respect to any and all of Plaintiffs' IEEPA Entries that remain unliquidated, order Defendants to promptly and completely refund IEEPA Tariff Payments, together with interest as provided by law, without requiring that Plaintiffs await liquidation of such entries—*i.e.*, order *pre*-liquidation refunds;

9) in addition to pre-judgment interest owing on the duty refunds, award Plaintiffs post-judgment interest on the refunded duties through the date of refund as provided under 28 U.S.C. § 1961, or other applicable statute;

10) award Plaintiffs their costs and reasonable attorney fees, including under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law; and

11) grant such other and further relief as may be just and proper.

/s/Martin Schaefermeier

Martin Schaefermeier
James E. Ransdell

CASSIDY LEVY KENT (USA) LLP
2112 Pennsylvania Avenue, N.W.
Suite 300
Washington, D.C. 20037
Tel: (202) 567-2402
*mschaefermeier@cassidylevy.com*

*Counsel to Occidental Chemical Corporation and Oxy Vinyls, LP*

Dated: August 10, 2026